**Robert E. DEINES, Plaintiff,**

v.

**VERMEER MANUFACTURING COM-PANY and Liberty Mutual Insurance Company, Defendants.**

**Civ. A. No. 88–2052–O.**

United States District Court, D. Kansas.

Nov. 28, 1990.

Gene E. Schroer, Schroer, Rice, P.A., Topeka, Kan., Aylward, Svaty & Sherman, Ellsworth, Kan., for plaintiff.

Keith Martin, Payne & Jones, Richard T. Merker, Wallace, Saunders, Austin, Brown and Enochs, Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on the motion of defendant Liberty Mutual Insurance Company (hereinafter "Liberty Mutual") for summary judgment. Plaintiff Robert E. Deines (hereinafter "Deines") contends that Liberty Mutual is liable because the insurer failed to inspect, advise, and counsel co-defendant Vermeer Manufacturing Company (hereinafter "Vermeer Manufacturing") that the company designed and manufactured a defective hay baler. Deines premises the alleged liability of Vermeer Manufacturing on section 324A of the *Restatement (Second) of Torts.* For the reasons stated below, we will grant defendant's summary judgment motion in part.

## I. STATEMENT OF FACTS

On October 30, 1986, plaintiff's right arm was amputated after it became entangled in the power-fed compression rollers of a Vermeer Model 605C hay baler. The model 605 line of hay balers was invented and designed by Gary Vermeer. Vermeer Manufacturing sold the 605C model from 1974 to 1979. Plaintiff contends that the intake area, operator's manual, and safety decals on the 605C model make the hay baler unreasonably dangerous and defective. The company continues to guard the intake area of its hay balers in the same manner that the intake area was guarded in 1974. The operator's manuals that accompanied the hay baler in question were published in 1974 and 1975 and the safety decals on the 605C model operated by Deines were designed in 1974.

Liberty Mutual provided Vermeer Manufacturing with products liability insurance from 1967 to November of 1975. The insurance company, as a condition of the policy, conducted safety inspections of the insured's products. This service was a "selling point" used by Liberty Mutual's insurance salesmen in describing coverage to prospective clients. The decision of Harry Vermeer and Gary Vermeer to purchase insurance from Liberty Mutual was made, in part, because they considered Liberty Mutual's inspections to be of value to Vermeer Manufacturing.

Liberty Mutual, through its agents and employees, conducted inspections of products manufactured by Vermeer Manufacturing. Lawrence William Shaul (hereinafter "Shaul"), a loss prevention consultant employed by Liberty Mutual, visited Vermeer Manufacturing's plant in Pella, Iowa, on a regular basis and "inspected almost all of the equipment." These inspections were conducted pursuant to Liberty Mutual's policies and procedures manual. Shaul examined Vermeer Manufacturing's products for compliance with standards published by the American National Standards Institute (hereinafter "ANSI"), the Occupational Safety and Health Administration (hereinafter "OSHA"), and the American Society of Agricultural Engineers (hereinafter "ASAE").

The purpose of the inspections was, in part, to help Vermeer Manufacturing prevent accidents. Vermeer Manufacturing solicited Shaul's opinion as to safety problems and occasionally sought his approval for a change in a product. Vermeer Manu-

facturing was receptive to Shaul's ideas. The company did not employ its own engineer during most of the relevant time period and therefore relied upon Liberty Mutual's inspections and its advice regarding the design of guarding, decals, warnings, operator manuals, and other safety aspects of hay baler models 605, 605A, 605B, and 605C.

## II. SUMMARY JUDGMENT STANDARDS

■ In considering a motion for summary judgment, the court must examine all the evidence in a light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). This burden is met when the moving party identifies those portions of the record which demonstrate the absence of material fact. *Id.* at 323, 106 S.Ct. at 2552.

■ Once the moving party meets these requirements, the burden shifts to the party resisting the motion, who "must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (emphasis added). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations of denials of his pleading." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

## III. LIABILITY UNDER RESTATEMENT (SECOND) OF TORTS, § 324A

■ Deines contends that Liberty Mutual undertook to perform safety engineering services for Vermeer Manufacturing, which the insurance company should have recognized as necessary to protect third persons, when Liberty Mutual conducted inspections and advised Vermeer Manufacturing as to safety aspects of the Model 605C hay baler. Plaintiff relies upon *Restatement (Second) of the Law of Torts* § 324A (1965) in support of his claims.[1] That section provides in pertinent part as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for the physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The Kansas Supreme Court first recognized and adopted the principles upon which section 324A is based in *Jenree v. The Metropolitan Street Railway Co.*, 86 Kan. 479, 121 P. 510 (1912). Over seventy years later, the court judicially adopted *Restatement of Torts (Second)* § 324A as the law of Kansas in *Schmeck v. City of Shawnee*, 232 Kan. 11, 26–27, 651 P.2d 585, 598 (1982).[2] The Supreme Court of Kansas re-

---

**1.** Section 324A of the Restatement (Second) of Torts applies only to cases involving physical injury. *Barber v. Williams*, 244 Kan. 318, 324, 767 P.2d 1284, 1289 (1989). Plaintiff states in his complaint that he "became entangled in [a Vermeer 605C hay baler] and was grievously injured, and has suffered above elbow amputation of his right arm."

**2.** In *Schmeck v. City of Shawnee*, 232 Kan. 11, 651 P.2d 585 (1982), a power company had accepted the responsibility for designing an in-

affirmed *Schmeck* in *Fudge v. City of Kansas City,* 239 Kan. 369, 373, 720 P.2d 1093, 1098–99 (1986), *Cansler v. State,* 234 Kan. 554, 566–67, 675 P.2d 57, 67 (1984), and *Ingram v. Howard–Needles–Tammen & Bergendoff,* 234 Kan. 289, 295, 672 P.2d 1083, 1087 (1983).

■ The threshold requirement for the application of section 324A is whether the defendant *undertook,* gratuitously or for consideration, to render services to another. *Evans v. Liberty Mut. Ins. Co.,* 398 F.2d 665, 667 (3d Cir.1968); *Leroy v. Hartford Steam Boiler Inspection & Ins. Co.,* 695 F.Supp. 1120, 1126–27 (D.Kan.1988); *Gooch v. Bethel A.M.E. Church,* 246 Kan. 663, 667, 792 P.2d 993, 998 (1990). Liberty Mutual argues that its inspections were conducted merely to serve its own interests of underwriting, rating and loss prevention, and hence it did not engage in an "undertaking." Plaintiff contends that the inspections served dual purposes. In addition to assisting the insurer determine whether to underwrite a risk, the inspections helped the insured prevent accidents. Several courts have held that any benefit derived by an insurer from inspections does not remove the inspection process from the scope of the "undertaking" envisioned by section 324A. *See, e.g., Brown v. Michigan Millers Mut. Ins. Co., Inc.,* 665 S.W.2d 630, 634 (Mo.App.1983); *Seay v. Travelers Indemnity, Co.,* 730 S.W.2d 774, 779 (Tex. App.1987).

■ An insurance carrier's representation to a policyholder that it offers inspection services for the benefit of said policyholder constitutes an "undertaking" on the part of the insurer. *Leroy v. Hartford Steam Boiler,* 695 F.Supp. at 1127 (dic-

tum); *see also Malkiewicz v. R.R. Donnelley & Sons Co.,* 703 F.Supp. 49, 50 (M.D. Tenn.1989) (insurer that attempts to improve safety is liable to those who are injured); *Schanz v. New Hampshire Ins. Co.,* 165 Mich.App. 395, 402, 418 N.W.2d 478, 482 (1988) (insurer who undertakes to inspect for insured's benefit owes duty to inspect with reasonable care); *Huggens v. Aetna Casualty & Surety Co.,* 245 Ga. 248, 248, 264 S.E.2d 191, 192 (1980) (reliance by employer on insurer's inspections gives rise to action in tort for negligent inspection). The uncontroverted facts establish that Liberty Mutual offered to conduct safety inspections[3] for the benefit of its policyholders and that the insured, Vermeer Manufacturing, relied upon such inspections.[4] We therefore find that the Liberty Mutual's actions meet the "undertaking" requirement of section 324A.

## A. *Liability of Liberty Mutual under § 324A(a)*

■ Subsection (a) requires that the activities of the defendant must have somehow increased the risk of harm to the plaintiff. *See, e.g., Canipe v. Nat'l Loss Control Serv. Corp.,* 736 F.2d 1055, 1062 (5th Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 969 (1985) (§ 324A(a) requires change in conditions that increase risk of harm to plaintiff over danger before defendant's involvement); *Dowling v. Am. Dist. Tel. Co.,* No. 85 C 4420, 1988 WL 93939 (N.D.Ill. Sept. 2, 1988) (§ 324A(a) applies where defendant creates new risk or increases existing risk). To avail himself of subsection (a), plaintiff must show some affirmative action by the defendant.

tersection traffic control system for the city. Since the designing of the traffic control system was not completed by the power company, the Kansas Supreme Court sustained a plaintiff's verdict against the power company when the plaintiff proved that she was injured as a result of the power company's failure to complete the job it started or undertook to complete.

3. Safety inspections, by their very nature, involve considerations of the well-being and protection of third parties. *Santillo v. Chambersburg Eng'g Co.,* 603 F.Supp. 211, 214 (E.D.Pa. 1985).

4. The deposition testimony of Shaul and Harold Vermeer indicates that the insurer's offer to conduct safety inspections to assist Vermeer Manufacturing in the prevention of accidents was instrumental in the hay baler manufacturer's decision to contract with Liberty Mutual for insurance coverage. The testimony of Shaul and Vermeer also establishes that such inspections were in fact performed by Liberty Mutual on a regular basis.

*Canipe,* 566 F.Supp. 521, 527 (N.D.Miss. 1983), *aff'd in part, rev'd in part,* 736 F.2d 1055 (5th Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 969 (1985). The comment to section 324A(a) makes clear that "increased risk" means some physical change to the environment or some other material alteration. *Patentas v. United States,* 687 F.2d 707, 717 (3d Cir.1982) (citing Restatement, *supra,* § 324A, Comment C, Illustration 1).[5] It is well established that mere negligence in failing to discover a danger on the part of a defendant, even if proved, would not subject the defendant to liability under § 324A(a). *See, e.g., Raymer v. United States,* 660 F.2d 1136, 1143 (6th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982); *Davis v. Liberty Mut. Ins. Co.,* 525 F.2d 1204, 1207 (5th Cir.1976); *Santillo v. Chambersburg Eng'g Co.,* 603 F.Supp. 211, 214 (E.D.Pa. 1985), *aff'd,* 802 F.2d 448 (3d Cir.1986); *Canipe, supra,* 566 F.Supp. at 527.

While the uncontroverted facts establish that Vermeer Manufacturing relied upon at least some of the advice provided by Liberty Mutual, with regard to safety decals, warnings, operators manuals, and other safety aspects of the 605 series of hay balers, plaintiff has failed to present any evidence that changes or alterations suggested by Liberty Mutual increased in any way the risk of harm to operators of Vermeer hay balers. The risk of becoming entangled in the hay balers' unguarded power-fed compression rollers existed independently of any failure to inspect or advise on the part of Liberty Mutual. At best, Liberty Mutual's alleged failure to advise merely "permitted the continuation of an existing risk," an inadequate basis upon which to impose liability under section

324A(a). *See Kirk v. United States,* 604 F.Supp. 1474, 1484 (D.N.H.1985); *Ricci v. Quality Bakers of Am. Coop, Inc.,* 556 F.Supp. 716, 720 (D.Del.1983); *Daggett v. County of Maricopa,* 160 Ariz. 80, 86, 770 P.2d 384, 390 (Ariz.App.1989). We must therefore conclude that Liberty Mutual did not increase the risk of harm to plaintiff within the meaning of subsection (a).

**B.** *Liability of Liberty Mutual under § 324A(b)*

■■■■■ Deines contends that Liberty Mutual is subject to liability under section 324A(b) because the insurer, by inspecting and rendering safety advice to Vermeer Manufacturing, undertook to perform a duty owed by Vermeer Manufacturing to plaintiff. In order for a duty to arise under section 324A(b), one does not have to assume the entire responsibility of another party. *Santillo v. Chambersburg Eng'g Co.,* 603 F.Supp. at 215. Subsection (b) comes into play when "the party who owes the plaintiff a duty of care has delegated to the defendant *any particular part* of that duty." *Canipe v. Nat'l Loss Control Serv. Corp.,* 736 F.2d at 1062–63 (emphasis added); *see also Schmeck v. City of Shawnee,* 232 Kan. at 26, 651 P.2d at 597 (assumption of part of City's duty permits application of § 324A(b)); *cf. Blessing v. United States,* 447 F.Supp. 1160, 1188–89 (E.D.Pa.1978) (defendant must "supplant" other party's duty).

■■■■■ In Kansas, a manufacturer has a duty to use reasonable care in designing its products so that they will be reasonably safe for their intended use. *Garst v. Gen. Motors Corp.,* 207 Kan. 2, 19, 484 P.2d 47, 60 (1971).[6] A manufacturer also has a duty to warn the user of a product of a dangerous condition in that product. *Long v.*

---

**5.** Increased risk of harm under § 324A(a) is illustrated by the Restatement:

 1. A operates a grocery store. An electric light hanging over one of the aisles of the store becomes defective, and A calls B Electric Company to repair it. B Company sends a workman, who repairs the light, but leaves the fixture so insecurely attached that it falls upon and injures C, a customer in the store who is walking down the aisle. B Company is subject to liability to C.

Restatement, *supra* § 324A, Comment c, Illustration C; *see also Hylin v. United States,* 715 F.2d 1206, 1212 (7th Cir.1983); *Thompson v. Bohlken,* 312 N.W.2d 501, 507–08 (Iowa 1981).

**6.** Liberty Mutual argues that Vermeer Manufacturing may not delegate its duty to design a reasonably safe product. In support of this argument, Liberty Mutual cites three cases from foreign jurisdictions in which courts concluded that a manufacturer could not shift its duty to provide a reasonably safe product to the ulti-

*Deere & Co.*, 238 Kan. 766, 774–75, 715 P.2d 1023, 1029 (1986); *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 409, 681 P.2d 1038, 1057, *cert. denied*, 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984); *see also* K.S.A. 60–3305 (manufacturer's duty to warn or protect against danger). The uncontroverted facts establish that Liberty Mutual actively engaged in advising Vermeer Manufacturing as to the design of the Model 605C hay baler as well as to the warnings placed on the hay baler.

Shaul examined the insured's products in order to determine whether they complied with ANSI, OSHA, and ASAE standards. Shaul also conducted his examinations in accordance with the insurer's policies and procedures manual to ascertain the potential for accidents involving the machines' operators. As a result of these examinations, Shaul provided advice to Vermeer Manufacturing with respect to the hay balers' guarding, safety decals, warnings, and operator's manuals. He suggested "certain additions and deletions from [Vermeer Manufacturing products] for safety purposes." After viewing this evidence in a light most favorable to Deines, we are of the opinion that Liberty Mutual undertook to perform at least in part the duties to warn and design reasonably safe products. These were duties owed by the insured to plaintiff. Defendant's summary judgment motion as to Deines' claim under section 324A(b) will therefore be denied.

C. *Liability of Liberty Mutual under § 324A(c)*

 Plaintiff insists that Liberty Mutual is liable under *Restatement (Sec-*

ond) *of Torts* § 324A(c). To impose liability under section 324A(c), there must be proof of actual reliance on a contractual undertaking or representations by the defendant that resulted in acts or omissions by the party relying on the defendant's undertaking. *Smith v. Universal Underwriters Ins. Co.*, 732 F.2d 129, 131 (11th Cir.1984); *Trosclair v. Bechtel Corp.*, 653 F.2d 162, 165 (5th Cir.1981); *Tillman v. Travelers Indem. Co.*, 506 F.2d 917, 921 (5th Cir.1975); *Stacy v. Aetna Casualty & Surety Co.*, 484 F.2d 289, 295, *reh'g denied*, 485 F.2d 688 (5th Cir.1973). Under subsection (c) of section 324A, a party conducting an inspection—

is subject to liability to a third person where the harm is suffered because of the reliance of the other for whom he undertakes to render the services, or of the third person himself, upon his undertaking. This is true whether or not the negligence of the [inspector] has created any new risk or increased an existing one. Where the reliance of the other, or of the third person, has induced him to forgo other remedies or precautions against such a risk, the harm results from the negligence as fully as if the [inspector] had created the risk.

*McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1270 (6th Cir.1988) (quoting *Restatement (Second)* § 324A, comment e (1965)); *Blalock v. Syracuse Stamping Co., Inc.*, 584 F.Supp. 454, 458 (E.D.Pa.1984) (quoting *Restatement (Second)* § 324A, comment e (1965)).[7]

In the case at bar, there can be no doubt that Vermeer Manufacturing relied exten-

mate user or consumer of the product. *See Bilotta v. Kelley Co., Inc.*, 346 N.W.2d 616, 624 (Minn.1984) (manufacturer could not delegate duty to produce reasonably safe product by offering optional safety device to consumer); *Shawver v. Roberts Corp.*, 90 Wis.2d 672, 681, 280 N.W.2d 226, 231 (1979) (duty to design reasonably safe product may not be delegated to purchaser or consumer); *Bexiga v. Havir Mfg. Corp.*, 60 N.J. 402, 409, 290 A.2d 281, 285 (1972) (manufacturer not absolved from liability where purchaser expected to provide safety devices). The present case may be distinguished from the three cited by defendant because Liberty Mutual undertook to perform services nec-

essary for the protection of consumers or users of products before those products were placed on the market. Vermeer Manufacturing is not attempting to transfer liability to the purchasers of its products.

7. *Accord Toppi v. United States*, 327 F.Supp. 1277, 1279 (E.D.Pa.1971) ("plaintiff may be able to establish that the government in fact undertook inspection, that such undertaking was negligently performed, and that plaintiff reasonably relied upon such inspection thereby causing his injuries); *see also Kohr v. Johns–Manville Corp.*, 534 F.Supp. 256, 259 (E.D.Pa.1982) (plaintiff's assertion of reliance brings defendant within

sively on Liberty Mutual for advice as to safety aspects of its products and, therefore, neglected or reduced its own safety practices. As noted above, Liberty Mutual conducted safety inspections on a regular basis for Vermeer Manufacturing from 1967 to 1975. Since Liberty Mutual's inspector, Shaul, provided Vermeer Manufacturing with safety advice, the insured did not employ its own engineer until the year in which coverage was terminated. Vermeer Manufacturing contacted Shaul by telephone whenever the insured was confronted with a problem concerning the safety of a product. On at least one occasion, safety decals and operator's manuals were sent to Shaul for his approval.

The hiring of an engineer by Vermeer Manufacturing before the company terminated its insurance coverage with Liberty Mutual suggests that the services provided by the insurer would have otherwise been performed by Vermeer Manufacturing had Liberty Mutual not provided them.[8] We believe at this point that Vermeer Manufacturing relied on Liberty Mutual's representations that the insurer would perform safety inspections. The court is of the opinion that Liberty Mutual's performance of these inspections resulted in acts or omissions by Vermeer Manufacturing in reliance on the insurer's undertaking. Liberty Mutual's summary judgment motion as to plaintiff's section 324A(c) claim will therefore be denied.

### D. Negation of Duty by Contract

 Liberty Mutual contends that the language of the insurance policy that it entered into with Vermeer Manufacturing negates any contractual undertaking of the insured's duty to third parties. We believe that this provision of the contract is void as against public policy. An agreement is against public policy if it is "injurious to the interests of the public, contravenes

some established interest of society, violates some public statute, or tends to interfere with the public welfare or safety." *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 808, 752 P.2d 645, 647–48 (1988); *Hunter v. Am. Rentals, Inc.*, 189 Kan. 615, 618, 371 P.2d 131, 133–34 (1962). The illegality of a contract from the standpoint of public policy depends on the facts and circumstances of a particular case. *Coleman, supra*, 242 Kan. at 808, 752 P.2d at 648 (citing *In re Estate of Shirk*, 186 Kan. 311, 350 P.2d 1 (1960)).

In the instant case, Vermeer Manufacturing contracted with Liberty Mutual for insurance coverage from 1967 to 1975. During these years, Vermeer Manufacturing did not employ an engineer of its own. The uncontroverted facts establish that the company relied heavily on inspections conducted by Liberty Mutual to insure that its hay balers were safe. Since the guarding on the intake area of Vermeer hay balers was designed and had remained unchanged since 1974, plaintiff claims that negligent inspections on the part of Liberty Mutual permitted a defective and unreasonably dangerous product to enter the marketplace.

 Public policy considerations impose a duty upon parties to a private contract, running to third persons, where negligence in performance of the contract creates a danger to the public. *Schmeck v. City of Shawnee*, 232 Kan. 11, 26–27, 651 P.2d 585, 597–98 (1982) (citing *Robinson v. Nightingale*, 188 Kan. 377, 383, 362 P.2d 432, 437 (1961)). We must conclude, after carefully examining all of the evidence in a light most favorable to the nonmoving party, that Liberty Mutual's allegedly negligent inspections created a danger to the public. The provision of the insurance policy negating the defendant insurer's liability is therefore void as against public policy.

---

scope of liability for breach of duty imposed by § 324A(c)).

**8.** The Eleventh Circuit held that a jury question was raised as to whether there was sufficient reliance under § 324A(c) based on considerably less evidence than is present in the instant ac-

tion. *See Phillips v. Liberty Mut. Ins. Co.*, 813 F.2d 1173 (11th Cir.1987). In *Phillips*, circumstantial evidence indicated that the insured "was relying all along on Liberty Mutual's inspections and would have stepped in had Liberty Mutual not undertaken to inspect." *Id.* at 1175.

## IV. LIBERTY MUTUAL'S INVOLVEMENT WITH VERMEER MANUFACTURING

■ Liberty Mutual claims that its involvement with Vermeer Manufacturing's Model 605C hay baler was too remote to hold the insurance company liable because the hay baler allegedly causing plaintiff's injury was not built until 1978, three years after Liberty Mutual ended its relationship with Vermeer Manufacturing. We must disagree. Liberty Mutual's participation was significant. This defendant conducted inspections of the Model 605 line of hay balers from 1971 until November of 1975. The guarding of the intake area of the Model 605C hay baler has not been modified since Vermeer Manufacturing began producing the hay baler in 1974. In addition, the safety decals on the intake area of the Model 605C hay baler were of the same design as those decals used when Liberty Mutual insured and advised Vermeer Manufacturing. Further, all three editions of the operator's manual for the Model 605C hay balers were published while Liberty Mutual still insured and advised Vermeer Manufacturing. Defendant's summary judgment motion asserting its involvement was too remote will be denied.

## V. APPLICABILITY OF THE KANSAS PRODUCT LIABILITY ACT

■ Liberty Mutual claims that it is not liable under the Kansas Product Liability Act (hereinafter "the Act"), K.S.A. 60–3301, *et seq.* The court is of the opinion that the Kansas Supreme Court would hold that the Act is inapplicable to the liability of this defendant. The Act applies to "manufacturers" and "product sellers." *See, e.g.,* K.S.A. 60–3305 (manufacturer's duty to warn or protect against danger);

K.S.A. 60–3306 (product sellers not subject to liability). Liberty Mutual concedes that insurance companies are not within the definition of a manufacturer as set forth in K.S.A. 60–3302(b),[9] or a product seller as set forth in K.S.A. 60–3302(a).[10] Deines contends that Liberty Mutual is liable under *Restatement (Second) of Torts* § 324A. The Kansas Supreme Court has adopted section 324A as the law of Kansas,[11] and there is no indication that the state legislature intended to bar a cause of action under the Restatement by enacting the Kansas Product Liability Act. Liberty Mutual's motion for summary judgment based on the Kansas Liability Act will be denied.

## VI. PERSONAL JURISDICTION OVER LIBERTY MUTUAL

■ Liberty Mutual contends that its contacts with Kansas are so minimal that it would be unfair and improper for this court to assert jurisdiction over it. In determining whether a nonresident defendant's contacts with the forum state are strong enough to warrant the exercise of personal jurisdiction over that defendant, the court must engage in a two-step analysis. First, the court must ascertain whether it has jurisdiction under the Kansas long-arm statute, K.S.A. 60–308(b). If long-arm jurisdiction is established, the court must then decide if the exercise of personal jurisdiction would violate the constitutional guarantee of due process. *Source Assoc., Inc. v. Suncast Group*, 709 F.Supp. 1023, 1024 (D.Kan.1989); *Hall v. Nat'l Basketball Ass'n*, 651 F.Supp. 335, 337 (D.Kan.1987). The plaintiff must satisfy both requirements by a *prima facie* showing before the court may exercise jurisdiction. *Behagen v. Amateur Basketball*

**9.** K.S.A. 60–3302(b) defines a "manufacturer" as a "product seller who designs, produces, makes, fabricates, constructs or manufactures the relevant product or component part of a product before its sale to a user or consumer. It includes a product seller or entity not otherwise a manufacturer, or that is owned in whole or in part by the manufacturer."

**10.** K.S.A. 60–3302(a) defines a "product seller" as "any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or for consumption. The term includes a manufacturer, wholesaler, distributor or retailer of the relevant product."

**11.** *See, e.g., Fudge v. City of Kansas City*, 239 Kan. 369, 373, 720 P.2d 1093, 1098–99 (1986); *Cansler v. State*, 234 Kan. 554, 566–67, 675 P.2d 57, 67 (1984); *Ingram v. Howard–Needles–Tammen & Bergendoff*, 234 Kan. 289, 295, 672 P.2d 1083, 1087 (1983); *Schmeck v. City of Shawnee*, 232 Kan. 11, 26–27, 651 P.2d 585, 598 (1982).

*Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). Factual doubts are resolved in favor of the plaintiff. *Ammon v. Kaplow*, 468 F.Supp. 1304, 1309 (D.Kan.1979).

### A. Application of the Kansas Long–Arm Statute

■■■■■ The determination of whether the Kansas long-arm statute is applicable must be made on a case-by-case basis. *Carrothers Constr. Co. v. Quality Serv. & Supply, Inc.*, 586 F.Supp. 134, 136 (D.Kan. 1984). The Kansas long-arm statute provides in part:

**Submitting to jurisdiction—process.** Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from doing any of these acts:

(1) Transaction of any business within this state ...

(7) causing to persons or property within this state any injury arising out of an act or omission outside of this state by the defendant if, at the time of the injury either (A) the defendant was engaged in solicitation or service activities within this state; or (B) products, materials or things possessed, serviced or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of trade or use;
...

K.S.A.1989 Supp. 60–308(b). The standards of K.S.A. 60–308(b) and the United States Constitution are essentially the same, however, because the Kansas long-arm statute is liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fourteenth Amendment to the U.S. Constitution. *Equifax Serv., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir.1990) (quoting *Volt Delta*

*Resources, Inc. v. Devine*, 241 Kan. 775, 777, 740 P.2d 1089, 1092 (1987)).

### B. Constitutional Requirements

■■■ For purposes of deciding whether the exercise of personal jurisdiction satisfies the requirements of due process, the Tenth Circuit has subscribed to a three-part test. *See Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1419 n. 6 (10th Cir.1988); *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1130–31 (10th Cir.1987). First, the defendant must have sufficient contacts with the forum state so that the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

■■■ Second, the defendant must have purposefully availed itself of the privilege of conducting activities in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Rambo v. Am. S. Ins. Co.*, 839 F.2d at 1417; *Corinthian Mortgage Corp. v. First Sec. Mortgage Co.*, 716 F.Supp. 527, 530 (D.Kan.1989). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Marcus Food Co. v. Family Foods of Tallahassee*, 729 F.Supp. 753, 759 (D.Kan.1990) (quoting *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239). Jurisdiction is proper where the nonresident's contacts with the forum state "proximately result from actions by the defendant that creates a 'substantial connection' with the forum state." *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *Johnson v. Goodyear S.A. Colmar Berg*, 716 F.Supp. 531, 534 (D.Kan.1989); *see also Composite Marine Propellers, Inc. v. Vanderwoude*, 741 F.Supp. 873, 877 (D.Kan.1990) (defendant's activities must be purposefully directed at residents of forum).

■ Third, the quality and nature of the defendant's contacts must be such that it is reasonable, "in the context of our federal system of government," to require the defendant to appear in the forum state. *Int'l Shoe, supra,* 326 U.S. at 317, 66 S.Ct. at 158; *Burger King, supra,* 471 U.S. at 476, 105 S.Ct. at 2184. In making the reasonableness inquiry, the court must consider several factors, including

> the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of several States in furthering fundamental substantive social policies."

*Asahi Metal Indus. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 292, 100 S.Ct. at 564); *Marcus Food Co., supra,* 729 F.Supp. at 758; *Corinthian Mortgage Corp., supra,* 716 F.Supp. at 530.

■ In the present case, we are compelled to hold that the court has personal jurisdiction over Liberty Mutual. Liberty Mutual is a foreign insurance corporation authorized to transact business in the State of Kansas. Liberty Mutual, pursuant to K.S.A. 40–218, authorized the Kansas Insurance Commissioner to accept service of process on its behalf. The insurance company also agreed that service of process upon the Commissioner of Insurance would be valid and binding. Thus, personal jurisdiction is proper in this action because this defendant purposefully availed itself of the privilege of transacting business in this state. Moreover, Liberty Mutual had actual knowledge that it could be haled into court in Kansas, and agreed to submit to the jurisdiction of the Kansas courts. Defendant's summary judgment motion as to personal jurisdiction will be denied.

IT IS THEREFORE ORDERED that Liberty Mutual's motion for summary judgment (Doc. No. 59) as to Deines' claim under section 324A(a) of the *Restatement (Second) of Torts* is hereby granted.

IT IS FURTHER ORDERED that Liberty Mutual's summary judgment motion (Doc. No. 59) as to plaintiff's remaining claims is denied.